**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **ANTHONY HAVEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 06-CV-516-JHP |
| | ) | |
| **BROWN SHOE COMPANY, INC.,** | ) | |
| **and BROWN GROUP RETAIL, INC.,** | ) | |
| **d/b/a FAMOUS FOOTWEAR,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

On September 26, 2006, Plaintiff Anthony Haven filed an action against Brown Shoe Company, Inc. and Brown Group Retail, Inc., in this Court, asserting claims of reverse gender discrimination pursuant to Title VII of the Civil Rights Act of 1964. A scheduling conference was held on February 2, 2007, after which the Court issued a scheduling order setting forth various discovery and trial-related deadlines.

Subsequently, on April 5, 2007, Haven's counsel filed a motion requesting to withdraw based upon an alleged breakdown in the attorney-client relationship. In response, on April 6, 2007, the Court entered an order granting Haven "thirty (30) days in which to advise the Court that he desires to proceed *pro se* or to provide the name of new counsel, and have new counsel file an entry of appearance," at which point Haven's current counsel would be permitted to withdraw. The Court directed counsel for Haven to "forward a copy of this Order to Anthony Haven forthwith."

Following entry of the Court's April 6, 2007 Order, the Court received a joint motion on April 23, 2007, requesting a stay of certain scheduling order deadlines. Defendants asserted that they had submitted interrogatories and requests for production to counsel for Haven prior to the

motion to withdraw, but had been advised by counsel for Haven that the breakdown in the attorney-client relationship prevented them from responding to Defendants' discovery requests. Accordingly, the parties requested a stay of certain pending scheduling order deadlines until Haven complied with the Court's April 6, 2007 Order.

In an effort to avoid piecemeal stays of the scheduling order, on May 3, 2007, the Court struck the current scheduling order and set a new scheduling conference for May 23, 2007 at 2:30 p.m., well after the 30 days granted to Haven in the Court's April 6, 2007 Order, so that Haven or his new counsel could participate in the creation of a new schedule to govern discovery and trial of the case. Unfortunately, as of May 23, 2007, Haven had failed to comply with the Court's April 6, 2007 Order requiring him to advise the Court of his desire to proceed *pro se* or to have new counsel enter an appearance. Recognizing the futility of holding a new scheduling conference without the participation of Haven or his new counsel, the Court struck the new scheduling conference.

Based upon Haven's failure to comply with the Court's previous order, on May 25, 2007, the Court issued a minute order discharging counsel for Haven from the case and directing Haven "to show cause within 15 days why his case should not be dismissed for failure to prosecute or to comply with this Court's Order of April 6, 2007, requiring...Haven either to inform the Court of his intention to proceed *pro se* or to obtain new counsel." The Court specifically advised Haven that the "failure to respond to this Minute Order within 15 days may result in the dismissal of [this] case." Although a copy of this minute order was mailed directly to Haven, and in spite of the Court's clear warning that his case may be dismissed for failing to respond, as of the date of this Order, Haven has still failed to comply with either the Court's April 6, 2007 Order or the Court's May 25, 2007 Minute Order.

The Court notes that "[a]s a general proposition, [a] trial court has the inherent power to dismiss a plaintiff's action for failure to prosecute or to comply with the rules of federal procedure or any order of the court." *Meeker v. Rizley*, 324 F.2d 269, 271 (10th Cir. 1963); *see also Link v. Wabash Railroad Co.*, 370 U.S. 626, 630-631 (1962) ("The authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."). In *Ehrenhaus v. Reynolds*, the Tenth Circuit set forth a number of factors that a court should generally consider before choosing dismissal as a sanction, including: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the plaintiff; (4) whether the court warned the plaintiff in advance that dismissal of the action would be a likely sanction; and (5) the efficacy of lesser sanctions. 965 F.2d 916, 921 (10th Cir. 1992). Although they do not form a rigid test, the Tenth Circuit has nevertheless indicated that courts "should ordinarily evaluate these factors on the record." *Id*. "'Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction.'" *Id*. (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1521 (10th Cir. 1988)). In failing to comply with the Court's April 6, 2007 Order, Haven has clearly prejudiced Defendants. Due to Haven's failure, Defendants have been unable to obtain necessary discovery in this case or to proceed in an orderly, efficient manner to the resolution of this case at trial. Likewise, Haven's failure to comply with the April 6, 2007 Order by either entering an appearance in this case *pro se* or having new counsel do so has just as clearly interfered with the judicial process. As a result of Haven's actions, the Court was forced to strike its May 23, 2007 scheduling conference, with the consequence that a new scheduling order

has yet to be entered in this case.  Moreover, Haven's failure to abide by the Court's various orders has undermined the authority of the Court.

With regard to his culpability, the Court notes that Haven has not offered any explanation of his failure to comply with two orders of the Court.  Although the Court is mindful of its obligation to "carefully assess whether it might appropriately impose some sanction other than dismissal, so that [a *pro se*] party does not unknowingly lose its right of access to the courts because of a technical violation," *Id*. at 920 n.3, the fact that the Court has addressed its orders to Haven, rather than his counsel, does not mitigate Haven's culpability.  Unlike the situation where a *pro se* party has unintentionally violated some obscure provision of procedural law, Haven has failed to obey the Court's initial instruction that he enter an appearance *pro se* or have new counsel enter an appearance on his behalf or the Court's follow-up instruction that he explain why he did not enter an appearance or have new counsel do so.  The Court has no reason to believe that Haven did not receive or understand these instructions.  Thus, the Court can only conclude that Haven's failure to comply with the Court's orders, without advising the Court of any inability or uncertainty as to how to comply, is the result of either wilfulness or inexcusable neglect.

Additionally, although the April 6, 2007 Order did not warn of possible sanctions as a result of its violation, the Court's May 25, 2007 Minute Order clearly identified dismissal as a possible sanction for Haven's failure to comply.  Thus, Haven cannot contend that the dismissal of his case would be surprising given his failure to comply with the Court's Minute Order directing him to show cause why his case should not be dismissed for failure to prosecute or to obey the Court's April 6, 2007 Order.

Finally, with regard to the efficacy of lesser sanctions, the Court recognizes that it has the

authority to impose lesser sanctions for Haven's failure to comply with its orders.  Nevertheless, given that Haven has not entered an appearance, either *pro se* or through new counsel, the Court is uncertain to what extent any other sanctions would be appropriate or effective in this case.  In light of Haven's failure to respond to two previous orders of the Court, it is unclear whether Haven would comply with lesser sanctions ordering affirmative actions on his part.  Instead, because Haven's actions have prevented this case from proceeding to its conclusion in an orderly and expeditious manner, the Court concludes that the most appropriate sanction in this case would be to dismiss this case, thereby avoiding further delays or the need for escalating sanctions.

Accordingly, based upon his failure to prosecute this action and to obey the orders of this Court, the Court hereby ORDERS that Plaintiff Anthony Haven's action against Defendants Brown Shoe Company, Inc., and Brown Group Retail, Inc., be DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED this 3rd day of July, 2007.

James H. Payne
United States District Judge
Northern District of Oklahoma